UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET EVOLA,

     Plaintiff,

v

     Case No.:  2:19-cv-13537
     Judge:  Sean Cox
     MJ:

HENRY FORD MACOMB HOSPITAL
CORPORATION, a foreign nonprofit
corporation,

     Defendant.

_____/

KENNETH D. FINEGOOD (P36170)
Attorney for Plaintiff
29566 Northwestern Highway
Suite 120
Southfield, MI 48034
(248) 351-0608

DANIEL J. RASSCHAERT (P70789)
RAMAR & PARADISO, P.C.
Attorney for Defendant
2151 Livernois Road
Suite 300
Troy, MI 48083
(313) 965-4532

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## BRIEF IN SUPPORT OF MOTION
## CERTIFICATE OF SERVICE

    **NOW COMES** the Defendant, HENRY FORD MACOMB HOSPITAL

CORPORATION, by and through its attorneys, RAMAR & PARADISO, P.C., and as its

Motion for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure 56,

states as follows:

    1.    Defendant relies upon the facts, testimony, exhibits, law, and arguments set

forth in the attached Brief as its Motion for Summary Judgment and incorporates the same

herein by reference as though stated word-for-word.

-i-

2.      No genuine issue of material fact exists in this matter, and Defendant is entitled

to judgment in its favor, as a matter of law.

3.      On July 20, 2020, defense counsel notified Plaintiff's counsel in writing of its

intent to file this dispositive motion and the legal basis contained therein, and requested

concurrence; however, Defendant was unable to conduct a conference or receive concurrence

from Plaintiff's counsel in the relief sought herein.

**WHEREFORE**, Defendant, HENRY FORD MACOMB HOSPITAL

CORPORATION, respectfully requests this Honorable Court grant its Motion for Summary

Judgment and dismiss this matter with prejudice.

RAMAR & PARADISO, P.C.

BY:   /S/    Daniel J. Rasschaert
         DANIEL J. RASSCHAERT (P70789)
         Attorney for Defendant
         2151 Livernois Road
         Suite 300
         Troy, MI 48083
         (313) 965-4532

DATED:  July 24, 2020

-ii-

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET EVOLA,

     Plaintiff,

v

HENRY FORD MACOMB HOSPITAL
CORPORATION, a foreign nonprofit
corporation,

     Defendant.

_____/

Case No.:   2:19-cv-13537
Judge:  Sean Cox
MJ:

KENNETH D. FINEGOOD (P36170)
Attorney for Plaintiff
29566 Northwestern Highway
Suite 120
Southfield, MI 48034
(248) 351-0608

DANIEL J. RASSCHAERT (P70789)
RAMAR & PARADISO, P.C.
Attorney for Defendant
2151 Livernois Road
Suite 300
Troy, MI 48083
(313) 965-4532

_____/

**<u>BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED……………………………………………………v

INDEX OF AUTHORITIES…………………………………………………………………vi

CONTROLLING AUTHORITY……………………………………………………………..vii

I. INTRODUCTION………………………………………………………………………1

II. STANDARD OF REVIEW……………………………………………………………1

III. THE ALLEGEDLY DANGEROUS CONDITION IN THIS CASEWAS OPEN AND OBVIOUS………………………………………………………………………………3

      A.     Applicable Law…………………………………………………………………3

      B.     Analysis………………………………………………………………………7

IV. NO SPECIAL ASPECTS EXISTED WHICH WOULD PRECLUDE APPLICATION OF THE OPEN AND OBVIOUS DANGER DOCTRINE…………………………...……12

      A.     Applicable Law………………………………………………………………..12

      B.     Analysis………………………………………………………………………14

V. CONCLUSION………………………………………………………………………15

INDEX OF EXHIBITS…………………………………………………………………..17

**STATEMENT OF ISSUE PRESENTED**

1.      Whether summary judgment is properly granted in favor of Henry Ford Macomb Hospital Corporation because the alleged condition was Open and Obvious with no special aspects.

Defendant answers "yes."

Plaintiff answers "no."

# INDEX OF AUTHORITY

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986)………………………1

*Horton v. Potter*, 369 F.3d 906, 909 (2004) (citing Celotex, 477 U.S. at 325)………….1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct. 1348,

89 L.Ed.2d 538 (1986)………………………………………………………………...1

*Copland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995)……………………………..2

*Cudney v. Sears, Roebuck & Co*,, 84 F. Supp. 2d 856, 858 (E.D. Mich. 2000)…….…..2

*Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)………………………………..2

*Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479 (6th Cir.1989)…………...……...2

*Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244; 235 NW2d 732

(1975)………………………………………………………………………………………3

*Bell & Hudson, PC v. Buhl Realty Co*., 185 Mich. App. 714, 717, 462

N.W.2d 851, 853 (1990)…………………………………………………………………3

*Benton v. Dart Properties, Inc*., 270 Mich. App. 437, 440, 715 N.W.2d 335

(2006)……………………………………………………………………………………3

*Taylor v. Laban*, 241 Mich. App. 449, 452, 616 N.W.2d 229 (2000)…………………..3

*Toomey v. Eureka Iron & Steel Works*, 89 Mich. 249, 50 N.W 850 (1891)…………….3

*Lugo v. Ameritech Corp., Inc*., 464 Mich. 512, 516, 629 N.W.2d 384 (2001…….3,13,14

*Hoffner v. Lanctoe*, 492 Mich. 450, 460-61, 821 N.W.2d 88 (2012)…..4,5,6,11,12,13,15

*Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002)…………………..…4,5

*Watts v. Michigan Multi-King, Inc*, 291 Mich. App. 98, 102, 804 N.W.2d 569 (2010)...4

*Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 328; 683 NW2d 573 (2004).....………4

*Novotney v. Burger King Corp.*, 198 Mich App 470, 475 (1993)...……………...11,12

**Rules**

Fed.R.Civ.P. 56………………………………….…………………………………………1

**Regulations**

2 Restatement of Torts § 343……………………………………………………………4

## CONTROLLING AUTHORITY

1. Fed. R. Civ. P. 56

2. *Celotex Corp. v Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986)

3. *Copland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995)

4. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir.2003)

5. *Hoffner v. Lanctoe*, 492 Mich. 450, 460-61, 821 N.W.2d 88, 94-95 (2012)

6. *Lugo v. Ameritech Corp., Inc*., 464 Mich. 512, 516, 629 N.W.2d 384 (2001)

7. *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479 (6th Cir.1989)

8. *Novotney v. Burger King Corp*., 198 Mich App 470, 475 (1993)

## I.      __INTRODUCTION__

This lawsuit arises from an incident that occurred on October 20, 2018, wherein Plaintiff, while lost and walking through the hallways at Henry Ford Macomb Hospital, with her service dog in arms, fell on what is claimed to have been a freshly mopped floor (***See Exhibit A***, Plaintiff's Complaint).   For purposes of this Motion only, Plaintiff's factual version of the incident is generally accepted.   Michigan courts have consistently held that incidents where an individual like Ms. Evola and the circumstances as those alleged in this matter are open and obvious as a matter of law, with no applicable special aspects.   Plaintiff has failed to establish that there is a genuine issue as to any material fact regarding her claim. Therefore, this Court should find that Henry Ford Macomb Hospital Corporation is entitled to judgment as a matter of law as the alleged condition was open and obvious with no special aspects.

## II.     __STANDARD OF REVIEW__

A motion for summary judgment under Fed. R. Civ. P. 56 is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.

The initial burden is on the moving party to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 28 (1986). After a moving party shows "there is an absence of evidence to support the non-moving party's case," *Horton v. Potter*, 369 F.3d 906, 909 (2004) (citing *Celotex*, 477 U.S. at 325), the burden shifts to the non-moving party, who "must do more than simply show that there is some

-1-

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must put forth evidence to show that "a genuine issue for trial" exists. *Horton*, 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587).

The court is required to "view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir.2003). Summary judgment is appropriate where the moving party shows that "the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record… do not raise a genuine issue of material fact for trial." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)).

If the party opposing the motion contends that facts are in dispute, he may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

In *Copland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the Sixth Circuit provided a more in-depth discussion on the burden of the non-moving party, explaining that the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Id*. Since this case is brought in by diversity, the Court must apply Michigan's substantive law as interpreted by the Michigan Supreme Court. See *Cudney v. Sears, Roebuck & Co*., 84 F. Supp. 2d 856, 858 (E.D. Mich. 2000).

### III.   THE ALLEGEDLY DANGEROUS CONDITION IN THIS CASE WAS OPEN AND OBVIOUS

#### A.   Applicable Law

An assessment of Plaintiff's premises liability claim must begin with an acknowledgment of a basic premise.   Accidents do happen, and a defendant does not owe a duty to prevent every accident from happening.   "It is the settled rule in this state that the mere fact of an accident is not sufficient to impose a liability for negligence. This rule is founded in reason and common sense."   T*oomey v. Eureka Iron & Steel Works*, 89 Mich. 249, 50 N.W 850 (1891). Premises liability requires a plaintiff to prove the elements of negligence:   (1) the defendant owed a duty; (2) the defendant breached that duty; (3) an injury proximately resulted from that breach; and (4) the plaintiff suffered damages.   *Benton v. Dart Properties, Inc*., 270 Mich. App. 437, 440, 715 N.W.2d 335 (2006); *Taylor v. Laban*, 241 Mich. App. 449, 452, 616 N.W.2d 229 (2000). "Unless the defendant owed a duty to the plaintiff, the analysis cannot proceed further." *Bell & Hudson, PC v. Buhl Realty Co*., 185 Mich. App. 714, 717, 462 N.W.2d 851, 853 (1990).

A premises possessor is not an absolute insurer of the safety of their invitees. *Quinlivan v. The Great Atlantic & Pacific Tea Co., Inc.,* 395 Mich. 244, 261, 235 N.W.2d 723 (1975).   However, a premises possessor does owe "a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land."   *Lugo v. Ameritech Corp., Inc.,* 464 Mich. 512, 516, 629 N.W.2d 384 (2001). There is no duty to protect an invitee against dangerous conditions that are open and obvious dangers, unless special aspects of a condition make even an open and obvious risk unreasonably

-3-

dangerous.  *Watts v. Michigan Multi-King, Inc*, 291 Mich. App. 98, 102, 804 N.W.2d 569

(2010). The test to determine if a danger is open and obvious is whether an average user of

ordinary intelligence would have been able to discover the danger and the risk presented upon

casual inspection.  *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 328; 683 NW2d 573

(2004); *Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002).

Our Supreme Court defined the duty of care a possessor of land owes to its invitees in

*Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244; 235 NW2d 732 (1975):  "A

possessor of land is subject to liability for physical harm caused to his invitees by a condition on

the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the

condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect

themselves against it, and (c) fails to exercise reasonable care to protect against the danger."

395 Mich at 258-59; 235 NW2d at 739 (quoting 2 Restatement of Torts § 343).

In *Hoffner v. Lanctoe*, 492 Mich. 450, 460-61, 821 N.W.2d 88, 94-95 (2012) (***Exhibit C***),

the Michigan Supreme Court explained the policy and the application of the open and obvious

doctrine:

> "Perfection is neither practicable nor required by the law, and '[u]nder ordinary
> circumstances, the overriding public policy of encouraging people to take
> reasonable care for their own safety precludes imposing a duty on the possessor
> of land to make ordinary [conditions] 'foolproof." Thus, an integral component
> of the duty owed to an invitee considers whether a defect is 'open and obvious.'
> The possessor of land 'owes no duty to protect or warn' of dangers that are open
> and obvious because such dangers, by their nature, apprise an invitee of the
> potential hazard, which the invitee may then take reasonable measures to avoid.

-4-

Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an objective standard, calling for an examination of 'the objective nature of the condition of the premises at issue.'"

Michigan courts have routinely found conditions analogous to the apparent condition in this case to be open and obvious as a matter of law. The following is an example of a case very similar to this one; where summary disposition was granted in favor of the defendant:

> ***Joyce v. Rubin***, 249 Mich. App. 231 (2002), (***Exhibit D***), Barry Rubin and his wife Debra hired Valary Joyce as a live-in caregiver for their mentally impaired daughter. Joyce lived and worked at the Rubins' home in West Bloomfield until March 1998. On March 10, 1998, as Joyce was removing her personal belongings from the Rubins' home, she fell  on the sidewalk leading to the Rubins' front door. Defendants filed motions for summary disposition under MCR 2.116(C)(10). Following oral argument, the trial court granted the motions. The trial court ruled that (1) there was no genuine issue of material fact regarding Joyce's knowledge of the condition of the walkway, (2) the condition was open and obvious, and (3) the risk of harm was not unreasonably dangerous. The Michigan Court of Appeals held that when the plaintiff "could have used an available, alternative route to avoid the [danger]," that danger is not unavoidable.

Defendant, however, will rely heavily on *Hoffner*, which sufficiently addresses the issues in this matter.   As this Court is aware, in *Hoffner*, the plaintiff, Charlotte Hoffner, slipped and fell outside the sole entrance to Fitness Xpress, a fitness center in Ironwood, Michigan, where she was a member. There was no factual dispute that Hoffner could see the ice patch at the entrance, but that she decided to enter the building anyway.   Hoffner suffered a back injury as a result of the fall.   As noted in detail below, and highly relevant to the issue this matter, the Michigan Supreme Court held that ice leading up to the only entrance of a Michigan fitness center was avoidable because the plaintiff was not "absolutely compelled" to confront it. According to the Supreme Court, the plaintiff could have chosen to turn around and gone home.   The majority

-5-

concluded that "the ice patch on the sidewalk that plaintiff chose to confront was open and obvious, and plaintiff has not provided evidence of special aspects of the condition to justify imposing liability on defendants despite the open and obvious nature of the danger." *Id*.

Emphasizing the "narrow nature" of the "special aspects" exception, the majority held that there were no "special aspects" that made the icy patch either effectively unavoidable or unreasonably dangerous. It held that the ice patch was not effectively unavoidable because Hoffner "was not forced to confront the risk, as even she admits; she was not 'trapped' in the building or compelled by extenuating circumstances with no choice but to traverse a previously unknown risk." According to the majority, Hoffner also "presented no evidence that the risk of harm associated with the ice patch was so unreasonably high that its presence was inexcusable, even in light of its open and obvious nature." In holding that there were no "special aspects" that avoided application of the open and obvious doctrine, the majority expressly rejected the notion that Hoffner's right to enter the fitness center as a member compelled her to confront the ice patch. It unequivocally stated that "[a] general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a 'special aspect' characterized by its unreasonable risk of harm." *Id.*

**B.**   **Analysis**

### Factual Summary

Plaintiff received a phone call from her brother on or about the morning of October 20, 2018, who notified her that their mother and father had been in an automobile accident (***See Exhibit B***, Deposition of Margaret Evola, pp. 9). Plaintiff learned during this conversation with

her brother that her father had suffered a heart attack while diving with her mother in the car (***See Exhibit B***, pp. 9).   Although injured in the automobile accident, Ms. Evola was informed that her mother was in the Intensive Care Unit (ICU) at Henry Ford Macomb Hospital (***See Exhibit B***, p. 10-11).   Ms. Evola lives with her sister, Rose Evola, in Falls Church, Virginia, and on the morning of October 20, 2018, the two traveled by car from Virginia to Michigan, going directly to Henry Ford Macomb Hospital ICU to see their mother, arriving at approximately 9:45 p.m. that same day (***See Exhibit B***, p. 10-11). Ms. Evola testified that once she arrived at the hospital, she went directly to her mother's room (***See Exhibit B***, p. 13).   Ms. Evola testified that thereafter, or within minutes of arriving at her mother's room, her service dog, Ace, needed to go outside to relieve himself (***See Exhibit B***, pp. 13-14).   Ms. Evola left the room and, because it was nearly 10:00 p.m., and she had never been to Henry Ford Macomb Hospital before that night, sought directions from an individual as to how to exit the hospital at that time of night, and was told the only exit was through the emergency department (***See Exhibit B***, pp. 16).

According to Ms. Evola, she and Ace exited the hospital through the emergency department exit; Ace relieved himself, and Ms. Evola smoked a cigarette, before entering the hospital through the same emergency department door that she just passed through roughly 10 minutes prior (***See Exhibit B***, p. 17).   After Ms. Evola entered the hospital, she admitted that she was lost, not knowing how to get back to her mother's room in the ICU (***See Exhibit B***, pp. 17).   Ms. Evola, knowing that her mother was on the second floor, ultimately took an elevator located near the emergency department to second floor (***See Exhibit B***, p. 18). However, Ms. Evola testified that upon arriving on the second floor, she exited the elevator but "was still lost," and further testified as follows:

-7-

> Q.      So when you exited the elevator, you searched for a couple minutes. How --
> within that couple minutes, how many hallways did you walk down?
>
> A.      It was just that short length of the corridor from the elevator. I'm going to say
> like after I got off the elevator, I think I went out to -- came off, I went to my
> left, thinking that is where -- down the hallway would take me to the rooms. I
> was not sure of the room number. I forgot it. (***See Exhibit B***, p. 20).

Ms. Evola testified that as she began to walk down the hallway in the hospital after exiting the elevator, she did not notice any rooms numbers on the walls or otherwise any landmark that looked familiar (***See Exhibit B***, p. 21).   Ms. Evola walked about 10 steps in one direction in the hallway before she turned around or "backtracked" and began to walk in the direction that she came, walking past the elevator that she had just exited (***See Exhibit B***, p. 21, 24).   She testified that after she turned around and began to walk that same hall in the opposite direction, she saw a housekeeper or Environmental Services Worker (EVS) at the end of the long hallway (***See Exhibit B***, pp. 21-22). Ms. Evola walked approximately 30 steps past the elevator, toward the direction of the EVS employee, and was approximately 30 steps from the EVS worker when she fell in the hallway of the hospital (***See Exhibit B***, pp. 25, 29).

<u>**Factual Analysis**</u>

Specific to the premises liability claim, Ms. Evola testified as to the following regarding the events leading up to the fall.   Ms. Evola stated that she was walking down the hall toward the EVS (housekeeping) worker, she did not notice any water, moisture, or pooling on the floor. However, she indicated that the floor appeared "quite shiny" (***See Exhibit B***, p. 26).   Ms. Evola testified that she was "trying to walk very carefully knowing that EVS had just mopped the floor" (***See Exhibit B***, p. 26).

-8-

When questioned about how she appreciated the fact that EVS had just mopped the floor, Defendant asserts that the relevant facts are as follows:   (1) Ms. Evola saw the EVS worker at the end of the hall, (2) she witnessed the EVS worker with the mop, (3) she knew the EVS worker had just mopped the floor, (4) her shoes were sticking to the floor as she walked, and (5) she concluded that the floor had just been mopped (*See Exhibit B*, p. 26).   Ms. Evola further testified that another reason she knew that the floor had recently been mopped, or was wet, was that while walking, the soft, rubber soles of her shoes were making a squeaking or squishing sound with each step (*See Exhibit B*, p. 28).   Ms. Evola testified that regardless of the aforementioned facts leading her to conclude that the floor had just recently been mopped, she made the conscious decision to continue to walk down that hall (*See Exhibit B*, pp. 26-27).   Moreover, Ms. Evola further testified that the EVS worker was roughly 30 feet down the hall, and she had a mop in hand, which she again testified caused her to conclude that the floors had recently been mopped and were wet (*See Exhibit B*, p. 28). It is not in dispute that Ms. Evola was aware or "discovered" the existence of a potential hazard which alone severs liability against Defendant absent special aspects.

Ms. Evola admitted on the record that she knew the floor was wet as she was walking down the hallway toward the EVS worker at the end of the hallway.   Her testimony was that she chose to continue to walking down that hall, again with an apparent understanding that it had just been mopped, her shoes squeaking, having witnessed the EVS worker with a mop in hand, but she continued to walk down the hall because she felt that it was the direction where her mother's room was located.   In addition to Ms. Evola's testimony that although she was well-aware that the floor was wet and had just been mopped based upon those numerous factors noted, she then

-9-

testified that she was walking down this "wet" hallway with her service dog, Ace, in her arms (*See Exhibit B*, p. 29).   Specifically, Ms. Evola testified as follows:

> Q.   Fair enough. So you kept on walking down that hall knowing that it had just been mopped, your shoes were squeaking, you saw the EVS worker with the mop in her hand, but you kept walking down the hall because you felt that that was the direction or that was the area where your mother's room was located; is that true?
>
> A.   That's true. (*See Exhibit B*, p. 29).

Importantly, Ms. Evola confirmed through her testimony that she had the option to turn around and avoid any potentially hazardous condition but instead chose to continue to walk down the hall that she knew could potentially pose a risk (*See Exhibit B*, p. 39). This is also evidenced by the fact that she had just come from the opposite direction without any difficulty or hazardous condition present. Defendant asserts that Ms. Evola failed to protect herself from the discovered potential hazard which also severs liability on behalf of Defendant. Moreover, for what it is worth, Ms. Evola testified that she did see yellow cautions signs affixed to the service cart which was located next to the EVS worker (*See Exhibit B*, p. 38-39).

In furtherance of the above facts proving that Ms. Evola appreciated the avoidable potential hazard and chose to confront it, Ms. Evola testified that she "was being very careful.   I always walk on my tiptoes on the floors that are wet.   At that point I was going very slow because I had the dog in my arms, but then that foot slipped out from under me and I fell" (*See Exhibit B*, p. 40).   So not only did Ms. Evola elect to encounter an easily avoidable hazard, she again confirmed she was aware of the hazard but, instead of turning around to walk in the opposing direction to protect herself and avoid the apparent hazard, which would be objectively reasonable

considering the fact that she was lost and had no apparent reason to continue down a potentially hazardous path, she testified that she instead was "walking on her tiptoes on the wet floor" and "going very slow because she had the dog in (her) arms." *Id*. It is not in dispute that the event in question occurred at approximately 10:30 p.m. on a Saturday night, and Ms. Evola confirmed that except for this sole EVS worker, the hallway in the area of the hospital where this fall occurred was completely empty, and that Ms. Evola was alone on the floor for about 25 minutes before she summoned help from whom she described as an operating room nurse.

Defendant asserts that summary judgment is proper because Ms. Evola was aware of the potential hazard and voluntarily chose to confront it despite the option to turn around and avoid the claimed hazard all together. There is no issue of fact that she appreciated the potential hazard and had the duty to use ordinary care for her own safety. This is an objective standard - "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner* at 461. What makes the facts in this matter synonymous to *Hoffner* was that the hazard here was discovered by Ms. Evola, and she voluntarily encountered this clearly open and obvious condition. Defendant asserts that a person of objectively ordinary intelligence would not have chosen to walk down a hallway that was alleged to have been recently mopped, on her tiptoes, with a dog in her arms.

In *Novotney v. Burger King Corp*., 198 Mich App 470, 475 (1993), it held that Michigan courts have routinely dismissed lawsuits where the complaining party was injured due to readily observable conditions, such as in the instant case. Because the allegedly dangerous condition was open and obvious, summary disposition should be granted. The duty generally does not

-11-

encompass warning about or removing open and obvious dangers unless the premises owner should anticipate that special aspects of the condition render it harmful despite the invitee's knowledge of it. *Id*. If the open and obvious condition has no such special aspects, the condition is not unreasonably dangerous. *Id*. at 517-519. There is no dispute that the condition was clearly open and obvious; this is clear from the testimony of Ms. Evola's testimony that she had knowledge of it.


IV. **NO SPECIAL ASPECTS EXISTED WHICH WOULD PRECLUDE APPLICATION OF THE OPEN AND OBVIOUS DANGER RULE**

A. **Applicable Law**

The duty of a landowner to its invitees outlined above does not extend to conditions that are open and obvious which, "by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner* at 460-461. "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. at 461. "This is an objective standard, calling for an examination of 'the objective nature of the condition of the premises at issue.' " *Id*.

There is a limited exception to the open and obvious defense, that being "when special aspects of a condition make even an open and obvious risk unreasonable." *Hoffner* at 461. There are "two instances in which the special aspects of an open and obvious hazard could give rise to liability: When the danger is unreasonably dangerous or when the danger is effectively

-12-

unavoidable." *Id*. at 463.   Recognizing that these exceptions are extremely narrow and limited, the court held:

> "It bears repeating that exceptions to the open and obvious doctrine are narrow and designed to permit liability for such dangers only in limited, extreme situations.   Thus, an 'unreasonably dangerous' hazard must be just that - not just a dangerous hazard, but one that is unreasonably so. And it must be more than theoretically or retrospectively dangerous, because even the most unassuming situation can often be dangerous under the wrong set of circumstances. An 'effectively unavoidable' hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a 'special aspect' characterized by its unreasonable risk of harm." [Citations omitted].   *Id*. at 472-473.

Indeed, in *Hoffner*, the court stated, "We have recognized that neither a common condition nor an avoidable condition is uniquely dangerous."   *Id*. at 463, citing *Lugo*, 464 Mich at 520.   In *Lugo*, the Michigan Supreme Court held that "[t]ypical open and obvious dangers (such as ordinary potholes in a parking lot) do not give rise to these special aspects." *Lugo* at 519.   In addition, if an ordinary person "would typically be able to see [the condition] and avoid it," then no special aspect exists.   *Id*. at 520.   It is worth noting *Lugo's* emphasis on the narrow nature of the "special aspects" exception to the open and obvious doctrine. Under this limited exception, liability may be imposed only for an "unusual" open and obvious condition that is "unreasonably dangerous" because it "present[s] an extremely high risk of severe harm to an invitee" in circumstances where there is "no sensible reason for such an inordinate risk of severe

harm to be presented." *Id*. at 519, n 2. Michigan courts have held that the typical trip and fall situation does not involve a special aspect.

In sum, because the danger associated with the wet floor was open and obvious, Defendant owed a duty to protect Ms. Evola only if "special aspects" of the wet floor made it "unreasonably dangerous." *Lugo*, 464 Mich. at 517. Such aspects exist when the danger is "effectively unavoidable" or "impose[s] an unreasonably high risk of severe harm." *Id*. at 518. Here, neither scenario exists.

**B.    Analysis**

Since the cause of Plaintiff's fall was visible upon casual observation, and the condition was actually discovered by Ms. Evola, the claimed hazard she chose to confront can be nothing but open and obvious.   Ms. Evola was not trapped or forced in any way to walk through the area in question. Plaintiff cannot prove evidence of a special aspect of the condition to justify imposing liability on Defendant despite the open and obvious nature premises, including whether the claimed hazard was effectively unavoidable. Ms. Evola testified in this regard as follows:

Q.    … You had testified that as you were walking down that hall you didn't know whether or not you were going in the right direction to reach your mother's room. In other words, you were lost, you didn't know if you were going in the -- if you were going the right way or not; is that correct?

A.    Correct.

Q.    So Mr. Finegood asked you that you had no other options to get to your mother's room but walk down that hallway, you didn't know whether or not your mother's room was at the end of that hallway or not, fair?

A.    Fair.

-14-

Q.      Okay. In fact, your mother's room could have been at the other end of the hospital, for all you knew? (Ex. B, p. 77-78).

A.      Could have been. I was lost. I'll admit it.

There were not any "special aspects" present that would preclude application of the open and obvious doctrine. The hallway in question was not effectively avoidable, nor did it pose a uniquely high risk or severity of harm, since an average person of ordinary intelligence would have simply turned around to avoid the potential hazard altogether.

## V.      CONCLUSION

The alleged hazard in this case is clearly open and obvious for no other reason than the fact that Ms. Evola recognized the claimed hazard based on those numerous factors noted above but yet chose to confront it.   The facts here are analogous to those in *Hoffner*, which Defendant asserts is the controlling case. In *Hoffner*, the Michigan Supreme Court held that ice leading up to the only entrance of a Michigan fitness center was avoidable because the plaintiff was not "*absolutely compelled*" to confront it. According to the Supreme Court, the plaintiff could have chosen to turn around.   Here, Plaintiff was able to reasonably conclude that the floor may be wet based on the EVS worker who was holding a mop at the end of the hall, it was clear to her that the floor may be wet because her shoes were making a squeaking noise, she testified that she started to walk very carefully and on her tip-toes because she felt that the floor was wet and recently mopped, but continued to walk down the hallway despite the known potential hazard.   Not to mention the fact that she was carrying a dog at the time. Importantly, Ms. Evola confirmed she could have easily turned around and avoided the hazard altogether by walking the opposite way. Instead she made a conscious and voluntary decision to continue to confront the apparent hazard

-15-

which resulted in a fall. This decision is contrary to that of an average person with ordinary intelligence. The overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary conditions foolproof. Defendant asserts that summary judgment is proper because Ms. Evola discovered or realized the danger, failed to protect herself against it, and failed to exercise reasonable care.

**WHEREFORE**, Defendant, HENRY FORD MACOMB HOSPITAL CORPORATION, respectfully requests that this Honorable Court dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 56, and in conjunction therewith, enter an Order with prejudice.

RAMAR & PARADISO, P.C.

BY:  /S/   Daniel J. Rasschaert
        DANIEL J. RASSCHAERT (P70789)
        Attorney for Defendant
        2151 Livernois Road
        Suite 300
        Troy, MI 48083
        (313) 965-4532

DATED:   July 24, 2020

-16-

## <u>INDEX OF EXHIBITS</u>

Exhibit A - Plaintiff's Complaint

Exhibit B - Plaintiff's Deposition Transcript

Exhibit C - *Hoffner v. Lanctoe*, 492 Mich. 450, 460-61, 821 N.W.2d 88, 94-95 (2012)

Exhibit D - *Joyce v. Rubin*, 249 Mich. App. 231 (2002)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET EVOLA,

      Plaintiff,

v                                                             Case No.:   2:19-cv-13537
                                                              Judge:  Sean Cox
HENRY FORD MACOMB HOSPITAL                                    MJ:
CORPORATION, a foreign nonprofit
corporation,

      Defendant.

_____/

## CERTIFICATE OF SERVICE

      I hereby certify that on the 24th day of July, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:   Clerk of the Court, and KENNETH D. FINEGOOD, Attorney for Plaintiff, 29566 Northwestern Highway, Suite 120, Southfield, MI 48034.

                         /S/   Andrea A. Parisi
                        ANDREA A. PARISI
                        Ramar & Paradiso, P.C.
                        2151 Livernois Road
                        Suite 300
                        Troy, MI 48083
                        (313) 965-4513
                        aparisi@ramarparadiso.com

-18-