UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Margaret Evola,

      Plaintiff,

v.                                       Civil Case No. 19-13537

Henry Ford Macomb Hospital,          Sean F. Cox
                                        United States District Court Judge

      Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a slip-and-fall case. Plaintiff, Margaret Evola ("Plaintiff") alleges that she sustained injuries when she slipped and fell on a wet floor at Defendant Henry Ford Macomb Hospital ("Defendant"). Defendant maintains that the condition was open and obvious with no special aspects.

This matter is before the Court on Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 16). The motion has been fully briefed by the parties, and the Court heard oral argument on the motion on November 5, 2020. For the reasons set forth below, the Court shall GRANT Defendant's motion.

### BACKGROUND

On October 20, 2018, Plaintiff was visiting her mother at Defendant's hospital accompanied by her service dog. (Pl. Dep. Attached to Def's Br. as Ex. B at p. 13). Shortly after arriving at her mother's room, Plaintiff's service dog needed to go to the bathroom. (Pl. Dep. at

p. 14). Plaintiff left her mother's room to take the dog outside around 10 p.m. (Pl. Dep. at p. 14).

She was outside for approximately 10 minutes to smoke a cigarette and let the dog relieve

himself. (Pl. Dep. at p. 16). She returned inside through the same doors she went out, but she

could not remember the way back to her mother's room. (Pl. Dep. at p. 17). However, she knew

her mother's room was on the second floor, so she went up an elevator and got off on the second

floor. (Pl. Dep. at p. 18). Once off the elevator, she turned right and walked about ten paces,

carrying her service dog. (Pl. Dep. at p. 19). Not seeing any familiar landmarks, Plaintiff then

turned around and walked toward the left end of the hallway passing the elevator she had just

exited. (Pl. Dep. at 29).

After Plaintiff had turned around and was walking to the left of the elevator, she saw an

environmental services worker place a mop in her bucket at the end of the hall. (Pl. Dep. at p. 19,

25). From this, she concluded that the floor had just been mopped, but decided to continue

walking in that direction:

> Q.      Okay. So you saw her at the end of the hall, you saw her with the mop,
>
> and you gathered or concluded that the floor had just been mopped?
>
> A.      Yes.
>
> Q.      And you elected to continue walking down that hall?
>
> A.      Yes.

(Pl. Dep. at 26-27). Plaintiff testified that she did not notice any water, moisture, or pooling on

the floor, but she testified she "knew that the floor was wet where [she] walked [because her]

shoes were sticking to it" and were making a "spongy, squeaky noise." (Pl. Dep. at 26-28). She

testified that the floor was "quite shiny," but that the floors in the whole hospital were also shiny.

(Pl. Dep. at 27). She also testified that she was "trying to walk very carefully knowing that EVS

had just mopped the floor." (Pl. Dep. at 26). Despite Plaintiff's knowledge that the floor was wet, she continued to walk down the hallway about 20 steps before she fell. (Pl. Dep. at 25, 29).

Plaintiff testified that she fell because her left leg got "stuck" from the rubber on her shoe sticking to the wet floor. (Pl. Dep. at 30). She fell forward on her left knee. (Pl. Dep. at 31). Then she fell to her right, landing on her right shoulder and letting go of her service dog. (Pl. Dep. at 32). Once the environmental services worker realized that Plaintiff had fallen, she came over to assist Plaintiff. (Pl. Dep. at 25). However, Plaintiff told the environmental services worker to leave her alone. (Pl. Dep. at 32). The environmental services worker left her, and Plaintiff was alone on the ground for approximately 10 minutes. (Pl. Dep at 33, 35). Then Plaintiff scooted a bit to the wall and noticed that the floor was wet. (Pl. Dep. at 38). Then she looked up and saw a sign that said operating room. (Pl. Dep. at 32). Then she started pounding on the wall and saying, "somebody help me, somebody help me, I broke my leg." (Pl. Dep. at 32). Then three OR nurses came, put her on a gurney, and took her to the Emergency Room where she received medical treatment for her injuries. (Pl. Dep. at 32, 49-51).

On November 29, 2019, Plaintiff filed her Complaint against Defendant in this Court based on the diversity of citizenship of the parties. (ECF No. 1). In her Complaint, Plaintiff alleges that Defendant breached its duty to invitees by allowing hazardous floor conditions to exist, and by failing to warn Plaintiff of the condition." (Compl. at 3). Plaintiff alleges she suffered personal injuries, including comminuted patellar fracture requiring surgery, torn rotator cuff requiring surgery and related injuries. (Compl. at 5). She also alleges that as a result of those injures, she experienced pain and suffering, humiliation, disability, mental anguish, embarrassment, wage loss and has incurred substantial medical and hospital bills for her care and treatment. (Compl. at 5).

Defendant filed its Motion for Summary Judgment on July 25, 2020. (ECF No. 16). In its motion, Defendant argues that it is entitled to judgment in its favor because the condition was open and obvious with no special aspects. Plaintiff responds (ECF No. 20) that the condition was not open and obvious, and it was effectively unavoidable constituting a special aspect obviating the open and obvious defense. Defendant has filed a reply in support of its motion. (ECF No. 21).

## STANDARDS OF REVIEW

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan governs the claims of in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

In Michigan, premises liability flows from the ownership, possession, or control of the land at issue. *Laier v. Kitchen*, 266 Mich.App. 482, 493, 702 N.W.2d 199 (2005). To succeed in a premises liability action, a plaintiff must prove: 1) that the defendant owed the plaintiff a duty; 2) that the defendant breached that duty; 3) that the defendant's breach caused the plaintiff's

harm, and 4) that the plaintiff suffered damages. *Hunley v. DuPont Automotive*, 341 F.3d 491, 496 (6th Cir. 2003).

For the purposes of premises liability, the landowner's duty depends on the status of the injured party. *Taylor v. Laban*, 241 Mich.App. 449, 425, 616 N.W.2d 229 (2000), *citing Doran v. Combs*, 135 Mich.App. 492, 495, 354 N.W.2d 804 (1984). Michigan utilizes three categories: invitees, licensees, and trespassers. *Kessler*, 448 F.3d at 336–37. An invitee is an individual who enters the land of another for a commercial purpose. *Cote v. Lowe's Home Ctr., Inc.*, 896 F.Supp.2d 637, 644 (E.D.Mich. 2012).

The parties agree that Plaintiff was an invitee on the Defendant's premises at the time of her fall.

### A. Is there a genuine issue of material fact as to whether the water spill was open and obvious?

Defendant argues that the wet floor was open and obvious, and therefore Defendant owed Plaintiff no duty to protect her from, or warn her of, the hazard.

The open and obvious doctrine is "an integral part of the definition of [the] duty that an invitor owes to its invitee." *Matteson v. Northwest Airlines, Inc.*, 495 Fed. App'x 689, 691 (6th Cir. 2012). The premises owner's duty to invitees does not include a duty to protect them from "open and obvious" dangers. *Matteson,* 495 Fed. App'x at 691(quoting *Lugo,*464 Mich. at 516, 629 N.W.2d 384). "Put simply, [the open and obvious doctrine] means that an invitor has no duty to protect its invitee from an open and obvious danger, unless that danger has special aspects that make it particularly likely to cause harm." *Id*.

A hazard is open and obvious if "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon causal inspection." *Id*. The Court

should consider whether "it is reasonable to expect that the invitee would discover the danger[.]" *Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475, 499 N.W.2d 379 (1993). "If reasonable minds could differ on the question of whether a condition is open and obvious, the decision must be left to the jury." *Mousa v. WalMart Stores E., L.P.*, 2013 WL 5352949, at 5 (E.D. Mich. 2013), *citing Vella v. Hyatt Corp.*, 166 F.Supp.2d 1193, 1198 (E.D. Mich. 2001).

Plaintiff cites many cases which have rejected the application of the open and obvious defense regarding hazards associated with clear liquids under Michigan law. However, unlike the case at hand, none of the plaintiffs in those cases testified that they were aware of the hazardous condition at the time they fell. Here, Plaintiff knew the floor was wet from her shoes sticking and making sounds. (Pl. Dep. at 26-28). Additionally, Plaintiff saw the environmental services worker place her mop back in the bucket at the end of the hallway.[1] (Pl. Dep. at 26). She testified that "I [knew] the floor was wet where I walked [was because] my shoes were sticking to it." (Pl. Dep. at 26). An excerpt from her deposition further demonstrates her knowledge of the wet floor before she fell:

Q. As you're walking down the hall prior to the fall, again, as you mentioned, she was approximately 30 feet away, she had a mop, you assumed that she had just mopped the floor; is that true?

A. That is true.

---

[1] In one of the cases Plaintiff cites, the lack of an employee mopping a floor is used to highlight that the dangerous condition was not open and obvious. *Watts v. Michigan Multi-King, Inc.*, 291 Mich. App. 98 at 100 (2010). Such is not the case here, Plaintiff *saw* an employee mopping the floor.

Q. And based on the fact that your feet were – were your shoes making a noise?

A. Like a squeaking noise, you know, that spongy sound, yes.

Q. So your feet, your shoes were making sort of like a spongy, squeaky noise, true?

A. Correct.

Q. That, in addition to seeing the individual at the end of the hall, led you to conclude that the floor had just been mopped; is that fair?

A. That's right.

(Pl. Dep. at 27-29). It is clear from her testimony Plaintiff knew that the floor was wet. There is also evidence that she was aware of the potential dangers of walking on wet surfaces because she testified that she "trying to walk very carefully knowing that EVS had just mopped the floor." (Pl. Dep. at 26).

It does not take much analysis to determine whether it is reasonable to expect that an invitee would discover the danger because Plaintiff *did* discover the danger prior to her fall. *Matteson,* 495 Fed. App'x at 691. Plaintiff was an invitee on the property with ordinary intelligence. She noticed the environmental service worker put the mop in the bucket at the end of the hall and that her shoes were making noises on the floor. From this casual inspection, she concluded that the floor was wet, and thus she discovered the danger and the risk presented by it. Plaintiff even modified her behavior after noticing the danger by walking carefully because she knew the floor was wet. Therefore, the wet floor was open and obvious. However, Defendant can still be found liable for an open and obvious hazard if special aspects are present. *Lugo,* 629 N.W.2d at 387.

**B. Is there a genuine issue of material fact as to whether the wet floor had any special aspects that would create an unreasonable risk of harm?**

An open and obvious hazard can lead to liability, if there are "special aspects of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm." *Lugo*, 629 N.W.2d at 387 (internal quotation marks omitted). A special aspect, for example, might include an open and obvious hazard that is (1) unavoidable, or (2) a condition that imposes an unreasonably high risk of severe harm. *Matteson*, 495 F. App'x at 691 (quoting *Lugo*, 629 N.W.2d at 387). "[N]either a common condition nor an avoidable condition is uniquely dangerous." *Hoffner v. Lanctoe*, 492 Mich. 450, 460-461 (2012).

"Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome." *Id*. at 468. "The standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id*. at 17. "A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a "special aspect" characterized by its unreasonable risk of harm." *Id*. at 21.

Here, the hazard was avoidable because Plaintiff had a choice whether to confront the wet floor. Plaintiff argues that it was unavoidable because the other end of the corridor was restricted to authorized entry only. However, Plaintiff had another alternative: she could have returned to the elevator, gone down the elevator, and sought directions from someone on the first floor. Plaintiff testified that she was lost and she did not see any familiar signage. She did not know whether her mother's room was at the end of the hall. She "just had an inkling that was the direction [she] should go down." Plaintiff was not required or compelled to confront the wet floor. By her own testimony, Plaintiff was lost and she didn't know the location of her mother's

room. She didn't know if it was at the end of the hall or "at the other end of the hospital." Upon noticing the wet floor, it would have been reasonable for her to return to the elevator to go back to the first floor and ask for directions. However, instead of retreating toward the elevator, Plaintiff continued to walk "very carefully" in the direction where she knew the floor was wet, and therefore continuing to choose to confront the dangerous hazard despite not knowing if she was walking in the direction of her mother's room.

Plaintiff argues that the hazard was effectively unavoidable because the whole area was wet. However, the facts at hand are distinguishable from other hazardous situations this Court has deemed unavoidable. In *Dybeck v. FedEx Trade Networks Transport & Brokerage, Inc.*, 997 F.Supp 2d 767 (2014), Judge Lawson held that the ice that caused a truck driver to slip and fall on while unloading freight was unavoidable because U.S. Customs required him to unload it at that specific facility. The truck driver "was under a legal duty to unload the freight at FedEx" and the entire loading area that he was required to use was covered with ice and snow. *Id.* at 775. Therefore, the dangerous hazard was open and obvious with a special aspect because it was unavoidable because the truck driver had no alternative. *Id.* at 775-776.

Here, unlike the truck driver in *Dybeck*, Plaintiff was not under any duty to confront the hazard. She did not even know if confronting the hazard would lead her to her mother's room. Plaintiff's situation is more analogous to *Parker-Dupree v. Raleigh*, 310013, 2013 WL 3032256 (Mich.Ct.Ap. June 18, 2013). In *Parker-Dupree*, the Michigan Court of Appeals affirmed summary judgment for the defendant because there was no issue of material fact that snowy conditions on the defendant's walkway were effectively unavoidable. *Id.* at 1. The plaintiff was a mail carrier who slipped and fell on snow and ice while delivering mail to the defendant's residence. *Id.* at 1. The court found that the plaintiff could have taken a different route that

9

avoided the snow, stepped off the slippery pathway, or informed her supervisor that the pathway was too slippery to deliver the mail. *Id*. at 2; *see also Dybeck*, 997 F. Supp. 2d at 775. Similarly, in the case at hand, Plaintiff had an alternative to walking on the wet floor: she could have returned to the elevator and sought directions to her mother's room. At least in *Parker-Dupree*, the plaintiff had a contractual obligation to deliver the mail, but the court ruled that due to the alternatives, the hazard was avoidable. *Parker-Dupree*, 2013 WL 3032256 at 2. Here, Plaintiff had no obligation to confront the hazard. She didn't even know if walking in that direction would accomplish her goal of getting back to her mother's room. In Plaintiff's case, therefore, the wet floor was avoidable because Plaintiff was not required or compelled to confront it.

Plaintiff has not presented any evidence that the wet floor imposed an unreasonably high risk of severe harm, such as the 30-foot pit in a parking lot like the *Lugos* court described. *Lugo*, 629 N.W.2d at 387. Therefore, it does not constitute an unreasonably high risk of severe harm for the special aspect open and obvious exception.

Therefore, the open and obvious hazard of the wet floor does not involve any special aspect because it was avoidable and did it not present an unreasonably high risk of severe harm.

## CONCLUSION

For the reasons explained above, IT IS SO ORDERED that Defendant's motion for summary judgment is GRANTED and the case is DISMISSED WITH PREJUDICE. IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: November 20, 2020